## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA E. THORNTON and JEREMIAH C. MITCHELL, as Co-Administrators of the Estate of Curtis L. Mitchell, deceased, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| CITY OF PITTSBURGH, ROBERT J. McCAUGHAN, MARK A. BOCIAN, RONALD W. ROMANO, JOSIE DIMON, ANDREW LAGOMARSINO, KIM LONG, NORMAN AUVIL, RON CURRY, ALLEGHENY COUNTY, and COUNTY OF ALLEGHENY DEPARTMENT OF EMERGENCY SERVICES, | ) Civil Action No. 10-1436 ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                          April 6, 2011

This is an action in civil rights. Plaintiffs,

Theresa Thornton and Jeremiah Mitchell, as co-administrators of

the estate of Curtis Mitchell, assert a claim pursuant to

section 1983 of the Civil Rights Act of 1871 ("section 1983"),

42 U.S.C. § 1983. Plaintiffs allege that defendants violated

Curtis Mitchell's right to substantive due process granted by

the Fourteenth Amendment to the United States Constitution by

failing to come to his rescue and take him to the hospital via

ambulance during a snow storm that dropped more than 21 inches of snow in approximately 24 hours. Plaintiffs also bring Pennsylvania state law claims against all defendants. Plaintiffs seek compensatory damages, damages for pain and suffering, punitive damages, and attorneys' fees.

On September 30, 2010, plaintiffs filed their original complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, but did not assert a federal claim. On October 1, 2010, plaintiffs filed an amended complaint in the Court of Common Pleas of Allegheny County and asserted a section 1983 claim. Defendants thereafter removed this case on the ground that the amended complaint asserted a claim arising under the United States Constitution. [Doc. No. 1].

All defendants have moved to dismiss the section 1983 claim contending that plaintiffs have not pled allegations sufficient to state a substantive due process violation. [Doc. Nos. 11, 14].

For the following reasons, defendants' motions to dismiss will be granted.

I. BACKGROUND

We accept the following factual allegations set forth in the amended complaint as true.

On February 5, 2010, a record snow storm began in the City of Pittsburgh at approximately 4:30 p.m. Approximately 11.4 inches of snow had accumulated by midnight. Throughout the day on February 6, 2010, approximately 9.7 more inches of snow had accumulated, resulting in a total accumulation of approximately 21.1 inches of snow.

At around 2:00 a.m. on February 6, 2010, decedent Curtis Mitchell began to experience abdominal pain. His girlfriend, Sharon Edge, who was present, called 911 for an ambulance. An ambulance was dispatched to Mr. Mitchell's residence located in the Hazelwood section of Pittsburgh. The ambulance never reached Mr. Mitchell's residence. Due to the snow covered streets, the ambulance was unable to cross the Elizabeth Street Bridge, which was approximately a quarter mile from Mr. Mitchell's residence and necessary to cross to reach his residence.

The emergency medical technicians ("EMTs") called Mr. Mitchell by telephone and informed him that they could not reach his residence, and directed him to walk the quarter mile distance to meet the ambulance. Ms. Edge explained to the 911

3

operator that Mr. Mitchell could not walk that distance because of his abdominal pain, nor could she carry him that distance. The EMTs abandoned the call and left the area.

Ms. Edge called 911 again sometime after the ambulance left. In the early morning of February 6, 2010, the 911 dispatcher informed Mr. Mitchell that a second ambulance was on its way. The second ambulance, however, was also unable to cross the Elizabeth Street Bridge because of the snow covered streets. Mr. Mitchell was once again asked to walk to the ambulance. Mr. Mitchell informed the 911 operator that he could not walk down the steps at his residence to meet the second ambulance because of his abdominal pain. The EMTs again abandoned the call and left the area.

Mr. Mitchell's condition continued to worsen and a third ambulance was dispatched to Mr. Mitchell's residence. The third ambulance was able to cross the Elizabeth Street Bridge, however due to the snow, it only got as close as approximately one block from Mr. Mitchell's residence. The EMTs called and asked Mr. Mitchell to walk to the ambulance. Ms. Edge informed the EMTs that Mr. Mitchell could not walk to meet the third ambulance because he had fallen asleep after taking prescription medication. The EMTs left the area.

At around 8:00 a.m. on February 7, 2010, Ms. Edge called 911 for the last time and informed the operator that Mr. Mitchell had died. Firefighters were dispatched to the scene and arrived at Mr. Mitchell's residence in approximately two minutes. During the course of Mr. Mitchell's medical emergency, Ms. Edge and Mr. Mitchell made approximately ten calls to 911 to request an ambulance.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. at 1950 (quoting Twombly, 550 U.S. at 555).

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we must conduct a three-step inquiry. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, we

must "take note of the elements a plaintiff must plead to state a claim." Id.; Iqbal, 129 S.Ct. at 1947. Next, we must identify the allegations that "are no more than conclusions [and] are not entitled to the assumption of truth." Id.; Iqbal, 129 S.Ct. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and determine whether they plausibly give rise to an entitlement of relief." Id.

We may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In the end, if, in view of the facts alleged, it can be reasonably conceived that the plaintiff could, upon a trial, establish a case that would entitle him to relief, the motion to dismiss should not be granted. Id. at 563 n.8.

III. DISCUSSION

Plaintiffs allege that defendants violated Mr. Mitchell's right to liberty as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, plaintiffs allege that defendants'

6

failure to establish policies and procedures, and failure to train emergency medical technicians, resulted in Mr. Mitchell being abandoned even though he was in need of medical assistance. Plaintiffs further allege that defendants, acting under color of state law, affirmatively created a danger to Mr. Mitchell because he relied upon assurances from defendants that emergency aid was forthcoming and therefore did not seek alternative forms of assistance.

Defendants all move to dismiss on the ground that plaintiffs' section 1983 claim fails to establish a violation of any federal law or Constitutional right. Specifically, defendants argue that plaintiffs' federal claims must be dismissed because plaintiffs have not pled allegations sufficient to state a plausible claim of a substantive due process violation.

We will grant the motions to dismiss because, accepting plaintiffs' allegations as true, they have failed to state a claim of a substantive due process violation.

A. Section 1983

Under section 1983, civil remedies are provided to individuals who have sustained a deprivation of rights secured by the United States Constitution or federal law. 42 U.S.C. § 1983. "Section 1983 does not, by its own terms, create

7

substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To establish a section 1983 claim a plaintiff must show a violation of a right secured by the United States Constitution or federal law and show that the deprivation was committed by a person acting under color of state law. Id. (citations omitted).

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The Due Process Clause is phrased as:

> "a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."

DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1989).

The standard for assessing alleged substantive due process violations is somewhat imprecise. Yet, governmental actions violate substantive due process when they are so arbitrary and unreasonable or "'such a substantial departure

8

from accepted professional judgment,'" Winston v. Children and Youth Servs. of Delaware County, 948 F.2d 1380, 1391 (3d Cir. 1991) (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982)), as to "shock[] the conscience" or offend "a sense of justice." Rochin v. California, 342 U.S. 165, 172-73 (1952).

### B.   State-Created Danger

The Constitution confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney, 489 U.S. at 196.   "Government generally has no constitutional duty to provide rescue services to its citizens, and if it does provide such services, it has no constitutional duty to provide competent services to people not in its custody." Salazar v. City of Chicago, 940 F.2d 233, 237 (7th Cir. 1991) (citing Deshaney, 489 U.S. at 196-197).   Specifically to this case, the Court of Appeals for the Third Circuit, after reviewing the holdings of other courts of appeal on the issue, has stated unequivocally that:

> "there is no federal constitutional right to rescue services, competent or otherwise. Moreover, because the Due Process Clause does not require the State to provide rescue services, it follows that we cannot interpret that clause so as to place an affirmative obligation on the State to

9

provide competent rescue services if it
chooses to provide them."

Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency
Medical Services Training Institute, 318 F.3d 473, 478 (3d Cir.
2003).

Ordinarily this would end the inquiry; however, the
United States Supreme Court has recognized two exceptions to
this general rule: the 'special relationship' exception and the
'state-created danger' exception. DeShaney, 489 U.S. at 200-
201. No special relationship has been alleged in this case;
rather plaintiffs assert the state-created danger theory of
liability as the exception to the general rule that the
Constitution does not make a sovereign a guarantor of your
safety.

The Court of Appeals for the Third Circuit first
addressed the state-created danger theory of liability in a case
where police officers stopped a visibly intoxicated couple
walking home on a cold winter night. Kneipp v. Tedder, 95 F.3d
1199, 1201 (3d Cir. 1996). The husband asked the officers if he
could go home to relieve their babysitter, to which the officers
said yes. Id. at 1202. The husband walked away and left his
seriously intoxicated wife with the officers. Id. The husband
assumed that the officers would take his intoxicated wife to the

10

hospital or the police station; instead the officers sent his wife to walk home alone. Id. The wife was found later at the bottom of an embankment with permanent brain damage from exposure to the cold. Id. at 1203.

The court of appeals found that there was sufficient evidence to show that the officers acted affirmatively and made the wife more vulnerable to danger than had they not intervened. Id. at 1209. The affirmative acts consisted of the police: (1) detaining the wife after sending her husband home, who was her only source of protection; and (2) sending her to walk home unescorted in a seriously intoxicated state at night in the cold weather. Id. The court of appeals stated that "[a]s a result of the affirmative acts of the police officers, the danger or risk of injury to [the wife] was greatly increased." Id.

In Brown, the court of appeals addressed a state-created danger claim that involved emergency rescue services. Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Services Training Institute, 318 F.3d 473, 475 (3d Cir. 2003). A one-year old child choked on a grape and his guardian called 911 and was told by the operator that "[r]escue is gonna come help you." Id. at 476. The guardian called four minutes later to determine when EMTs would arrive and was told by the operator again that "[r]escue was on the way." Id. The

11

guardian called a third time and was told the same. Id. Help
came around ten minutes after the initial 911 call; however,
this was too late for the child, who died two days later of
asphyxiation. Id. The child's parents filed a section 1983
action against the City of Philadelphia and two emergency
medical technicians for alleged violations of the child's
substantive due process rights. Id.

The court of appeals affirmed the district court's
order granting the City's and the EMT's motions for summary
judgment. Id. at 482-483. The court of appeals held that
"there is no federal constitutional right to rescue services,
competent or otherwise." Id. at 478. The court of appeals
concluded that "[t]he City was under no constitutional
obligation to provide competent rescue services," and that even
if it accepted all of the plaintiffs allegations as true, they
would still have "failed to establish that the City's policies
caused constitutional harm." Id. at 483 (emphasis in original).

Thus, the court of appeals teaches that to state a
claim under the state-created danger theory of liability, a
plaintiff must show the following elements:

> (1) the harm ultimately caused was
> foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of
> culpability that shocks the conscience;

12

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts...; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 304-305 (3d Cir. 2006) (citations omitted).

## 1. Affirmative Act Element

The main focus of defendants' motions to dismiss is upon this fourth element of a state-created danger claim, commonly referred to as the affirmative act element. The affirmative act element requires that plaintiffs allege that defendants used their authority to restrain Mr. Mitchell's freedom to act on his own behalf or rendered him more vulnerable to danger than had they not acted at all.

Recent opinions from the Court of Appeals for the Third Circuit have addressed the affirmative act element of a state-created danger claim. Bright v. Westmoreland County, 443 F.3d 276 (3d Cir. 2006); Ye v. U.S., 484 F.3d 634 (3d Cir. 2007).

In Bright, a father relied upon the assurances of a police officer that the man who victimized his 12-year-old

13

daughter would be immediately arrested for continuing to contact her in violation of his probation; however, an arrest was never made. Bright, 443 F.3d at 279. The father sued alleging a state-created danger theory of liability after the victimizer ultimately killed the sister of the 12-year-old victim in retaliation for the family's efforts to prevent him from seeing the victim. Id.

The court of appeals held that state-created danger liability could not be predicated upon the father's reliance on assurances made by an officer that the victimizer would be arrested. Id. at 284. The court of appeals concluded that the state was not liable because the police did not restrict the father's freedom to act on his family's own behalf. Id. (citing DeShaney, 489 U.S. at 200). In Bright, the court of appeals left no doubt that there could be no state-created danger liability where the state did not restrict a person's freedom to act on their own behalf. Id. at 284.

The court of appeals revisited the affirmative act element a year later in Ye and held that "a mere assurance cannot form the basis of a state-created danger claim." Ye, 484 F.3d at 640. Ye involved a doctor, who after previously diagnosing the plaintiff with hypertension, coronary artery disease, and angina, told the plaintiff that he had nothing to

14

worry about when he came to the doctor complaining of shortness of breath, coughing, and discomfort in his upper-body area. Id. at 635. The plaintiff had a heart attack later that day, which resulted in permanent health issues. Id. The plaintiff filed a section 1983 lawsuit alleging that the doctor's assurances created a danger to him because he relied on the assurances instead of seeking immediate medical care. Id. The court of appeals stated that under DeShaney and Bright it had been made clear that while assurances could give rise to other forms of liability, they "are not 'affirmative' acts within the meaning of the fourth element of a state-created danger claim." Id. at 642.

Citing Kneipp, Brown, Bright, and Ye, our sister district court recently dismissed a complaint alleging a very similar state-created danger claim in Perez v. City of Philadelphia, 701 F.Supp.2d 658 (E.D. Pa. 2010). In Perez, the plaintiffs relied upon a 911 operator's assurances that an ambulance had been dispatched to assist their child, who ultimately died after suffering an asthma attack. Id. at 661.

The district court succinctly stated that "Third Circuit precedents require a physical interaction with the state in which an act of the state limits the plaintiff's freedom of action, including the option to seek outside help." Id. at 669.

The district court concluded that reliance on the 911 operator, without more, could not establish state-created danger liability because "plaintiffs had no constitutionally-recognized reliance interest in the first place: the Third Circuit has clearly stated that there is 'no federal constitutional right to rescue services, competent or otherwise.'" Id. at 670 (quoting Brown, 318 F.3d at 478).

Thus under clearly established controlling law, a citizen not in state custody has no constitutional entitlement to rescue services from the State, even if the State has undertaken to provide them. Indeed, even if in providing such services, the State does so in an incompetent manner, it still does not rise to a constitutional violation.

## 2. Plaintiffs' State-Created Danger Claim

We are not persuaded by plaintiffs' theory that defendants' affirmative representations that an ambulance would be sent, along with the actual dispatch of three ambulances, created a constitutional violation because Mr. Mitchell reasonably relied on the help that was coming. Plaintiffs contend that had the 911 operators not told Mr. Mitchell that an ambulance was coming, he could have acquired other means of

assistance.[1] However, under controlling precedent, these allegations, even if true, are insufficient to state a substantive due process violation under a state-created danger theory of liability.

We need not dwell on this at length. The Court of Appeals for the Third Circuit has made clear that assurances of help cannot satisfy the affirmative act element. Ye, 484 F.3d at 641 (citing DeShaney, 489 U.S. at 200; Bright, 484 F.3d at 284). The court of appeals has also made clear that there is no liability for state-created danger where the State does not restrict a person's freedom to act on their own behalf. Bright, 484 F.3d at 284. Assurances that ambulances would be dispatched to assist Mr. Mitchell, and in fact were dispatched, do not constitute affirmative acts that rendered Mr. Mitchell more vulnerable to danger than had defendants not acted at all. Mr. Mitchell's freedom to seek outside help was not restrained by these assurances; therefore, according to controlling legal authority, plaintiffs have not asserted a plausible state-created danger claim under the Fourteenth Amendment.

The authorities cited to by plaintiffs in opposition to the motions are distinguishable from this case. In all of

---

[1] Plaintiffs do not allege in the amended complaint what the alternative source of assistance would have been.

17

these cases, a state actor engaged in some sort of physical interaction that created a danger to the victim. For instance, in Kneipp the police officers detained the intoxicated wife and sent her to walk home alone on a cold winter night. Kneipp, 95 F.3d at 1209. In Taylor, the child was forcibly detained, Taylor v Altoona Area School Dist., 513 F.Supp.2d 540 (W.D. Pa. 2007), and in Hayes, the state removed the girl from her home and placed her into foster care, Hayes v. Erie County Office of Children & Youth, 497 F.Supp.2d 684 (W.D. Pa. 2007). These cases are clearly distinguishable from the present case because defendants never detained Mr. Mitchell nor did they restrain his freedom to act on his own behalf.

Reduced to its essence, plaintiffs seek to introduce into Constitutional law jurisprudence a theory of liability akin to a common law detrimental reliance claim. Plaintiffs have cited to no authority for this novel theory, which is not surprising as it is not the law.

Ordinarily, if a complaint in a civil rights case is vulnerable to 12(b)(6) dismissal, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 237 (3d Cir. 2008) (citations omitted). In this case, plaintiffs will not be granted leave to amend their complaint.

18

The factual allegations in this case are not in dispute, and even when accepting all of plaintiffs' allegations as true, there is no plausible claim for a violation of Mr. Mitchell's right to substantive due process. Further amendment will not cure this deficiency. Accordingly, plaintiffs' section 1983 claim will be dismissed, with prejudice.

## C. State Law Claims

In addition to their federal claim, plaintiffs have brought several state law claims against defendants. The court must, therefore, consider whether to entertain those state law claims under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367. Supplemental jurisdiction is designed to permit the parties to resolve, in one judicial proceeding, all claims arising out of a common nucleus of operative facts, without regard to their federal or state character. The purpose of supplemental jurisdiction is to promote convenience and efficient judicial administration. See generally David D. Siegal, Practice Commentary: The 1990 Adoption of § 1367, Codifying "Supplemental" Jurisdiction, 28 U.S.C.A. § 1367, at 829-838 (1993).

Where the district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

Whether the court will exercise supplemental jurisdiction is within its discretion. Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009). The primary justification for exercising supplemental jurisdiction, however, is absent if the substantive federal claim is no longer viable.

There is no bright line rule for determining whether to exercise supplemental jurisdiction when the federal law claims have been eliminated before trial. The United States Supreme Court has made clear, however, that the balance of factors, i.e., judicial economy, convenience, fairness, and comity, "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The court finds that the balance of factors points toward declining to exercise supplemental jurisdiction over plaintiffs' state law claims. Therefore, plaintiffs' state law claims will be remanded to state court.

IV. Conclusion

Based on the foregoing, we will grant defendants' motions to dismiss the federal section 1983 claim in the amended complaint, with prejudice. We will remand plaintiffs' state law claims to state court.

An appropriate order follows.

20

IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THERESA E. THORNTON and          )
JEREMIAH C. MITCHELL, as         )
Co-Administrators of the         )
Estate of Curtis L.              )
Mitchell, deceased,              )
                                 )
            Plaintiffs,           )
                                 )
       v.                        )
                                 )
CITY OF PITTSBURGH, ROBERT       )  Civil Action No. 10-1436
J. McCAUGHAN, MARK A.            )
BOCIAN, RONALD W. ROMANO,        )
JOSIE DIMON, ANDREW              )
LAGOMARSINO, KIM LONG,           )
NORMAN AUVIL, RON CURRY,         )
ALLEGHENY COUNTY, and            )
COUNTY OF ALLEGHENY              )
DEPARTMENT OF EMERGENCY          )
SERVICES,                        )
                                 )
            Defendants.           )

                               ORDER

            AND NOW, this 6th day of April, 2011, IT IS HEREBY

ORDERED that Allegheny County and County of Allegheny Department

of Emergency Services' motion to dismiss plaintiffs' federal

section 1983 claim [Doc. No. 11] is GRANTED, with prejudice.

            IT IS FURTHER ORDERED that City of Pittsburgh, Robert

J. McCaughan, Mark A. Bocian, Ronald V. Romano, Josie Dimon,

Andrew Lagomarsino, Kim Long, Norman Auvil, and Ron Curry's

motion to dismiss plaintiffs' federal section 1983 claim [Doc.

No. 14] is GRANTED, with prejudice.

IT IS FURTHER ORDERED that we decline to exercise supplement jurisdiction over plaintiffs' state law claims and remand those claims to the Court of Common Pleas of Allegheny County, Pennsylvania.

BY THE COURT:

s/Gary L. Lancaster    ,C.J.

Hon. Gary L. Lancaster,
Chief United States District Judge

cc:  All Counsel of Record